Concerned Citizens of Forest Hills Inc. v West Side Tennis Club (2024 NY Slip Op 50420(U))

[*1]

Concerned Citizens of Forest Hills Inc. v West Side Tennis Club

2024 NY Slip Op 50420(U)

Decided on April 12, 2024

Supreme Court, Queens County

Caloras, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 12, 2024
Supreme Court, Queens County

Concerned Citizens of Forest Hills Inc., 
 CHRISTOPHER JARAY, DOUGLAS GILBERT, EMORY ANDERSON, Plaintiff,

against
The West Side Tennis Club, Defendant.

Index No. 726173/2023

ATTORNEYS FOR PLAINTIFFS: 
Stephen OREL, ESQ
SCHWARTZ SLADKUS REICH GREENBERG & ATLAS LLP
Address: 444 Madison Avenue, New York, NY 10022 
Phone:212-743-7049 
sorel@ssrga.com
Madison Nicole Kelley 
Firm Name: Schwartz Sladkus Reich Greenberg Atlas LLP 
Address:444 Madison Avenue 6th Floor, New York, NY 10022
Phone:2127437000 
E-mail: mkelley@ssrga.com
ATTORNEYS FOR DEFENDANT:
Akiva Shapiro 
Firm Name: GIBSON, DUNN & CRUTCHER LLP 
Address:200 Park Ave, New York, NY 10166 
Phone:(212) 351-4000 
E-mail: MAO@gibsondunn.com
Michael Langsdorf Nadler 
Firm Name: Gibson, Dunn & Crutcher 
Address: 200 Park Ave, New York, NY 10166
Phone:(212) 351-4000 
E-mail: mao@gibsondunn.com + MNadler@gibsondunn.com 

Robert I. Caloras, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 5-18, 27-73, and 86 read on this motion by Plaintiffs for a PRELIMINARY INJUNCTION / ORDER, enjoining or restraining Defendant.
Upon the foregoing documents, it is ordered that Plaintiffs' motion for a preliminary injunction is decided as follows:
According to the Complaint, this case concerns a dispute over noise emanating from the Forest Hills Stadium, located at 1 Tennis Place, Forest Hills, NY 11375 (the "Stadium") where Defendant, The West Side Tennis Club ("The WSTC") historically held the U.S. Open tennis tournament, and now hosts events, including concerts. Plaintiffs consist of a not-for-profit organization, the Concerned Citizens of Forest Hills Inc. ("Concerned Citizens"), and its members who are Forest Hills residents, including individual plaintiffs CHRISTOPHER JARAY ("Jaray"), DOUGLAS GILBERT ("Gilbert"), and EMORY ANDERSON ("Anderson") (collectively referred to as "Individual Plaintiffs").
Plaintiffs now request an Order from this Court:
"a) preliminarily enjoining Defendant from creating and/or allowing noise to emanate from the Stadium in excess of what is allowed under the New York City Noise Code (the "Noise Code");
b) preliminarily enjoining Defendant from holding any concert or largescale event in 2024 until a plan is implemented, in consultation with the Plaintiffs, to reduce the noise levels in order to be in compliance with the Noise Code, including without limitation Noise Code § 24-231; and
c) requiring dBA, dBC, and one-third octave band levels to be continuously monitored by an independent noise monitoring organization approved by the Court and paid for by Defendant during the Stadium's sound checks and concerts, with readings being promptly disclosed to Plaintiffs after each show."
(E16). Plaintiffs argue that they should be granted the requested relief because they have established that they have a likelihood of success on their private nuisance claim, that they will suffer irreparable harm should the injunction not be granted, and that the balance of equities leans in their favor. In support of their arguments, Plaintiffs submit affidavits from Individual Plaintiffs, as well as data-filled reports and an affidavit by Alan Fierstein, an acoustical engineer and founder of Acoustilog, Inc. ("Acoustilog"). The affidavits from Individual Plaintiffs describe the disturbances they allegedly experience including extreme noise and bass vibrations that keep them awake at night, shake their homes and windows, cause anxiety, and disturb their daily routines. Individual Plaintiffs allege that such disturbances create a substantial and unreasonable interference with their use and enjoyment of their property.
Plaintiff also relies on the Fierstein Affidavit and his accompanying reports to indicate that the noise caused by the performances at the Stadium is unreasonable because it exceeds the noise level permitted under the Noise Code, specifically § 24-203[62], § 24-218[a-l][l]-[2], and § 24-23l[a][2]. Mr. Fierstein, according to his reports and affidavit, conducted three sound studies, one on October 21, 2022, another over the course of multiple days in June 2023, and one on August 5, 2023. These sound studies consisted of taking noise measurements in various locations, including inside Individual Plaintiffs' homes. Among Mr. Fierstein's measurements on October 21, 2022, was the finding that inside plaintiff-Gilbert's home the sound level between songs was at times below 45 decibels and during songs was at points over 90 decibels, where 90 decibels "is subjectively 22.63 times as loud (2263%) as the 45 decibel Noise Code limit" (E10). [*2]Mr. Fierstein further stated that "the bass noises emanating from the Stadium into Gilbert's Home were so incredibly loud, even as high as 90 dBC, compared to the dBC levels before and after the Stadium concert, which were as low as 57 dBC" where "Noise Code §24-231(a)(3) sets the maximum limit to 68 dBC" (E10). Results from Mr. Fierstein's June tests of Tieu's home led him to conclude "the Stadium's music often exceeded 65 dBA, which is 14 dBA louder than the ambient noise level [he] measured at 51 dBA." (E10). Mr. Fierstein's August findings, taken during the day-long Rock the Bells festival, from both inside certain Individual Plaintiffs' homes and outdoors also indicated noise levels in excess of the Noise Code. Based thereupon, Plaintiffs argue that because sound levels during Stadium performances were over the Noise Code limits, the sound emanating from the Stadium has been unreasonable, and Plaintiffs are likely to prevail on their private nuisance claim.
Plaintiffs also argue that they will suffer irreparable harm should they not be granted a preliminary injunction, and that the balance of equities is in their favor. They argue they equities lean in their favor, in part, because Defendant will allegedly suffer little or no harm from the injunction, while failure to grant the injunction will result in endangering Plaintiffs' health and wellbeing.
Defendant opposes and argues, among other things, that Plaintiffs' Complaint is defective because pursuant to CPLR 1001(a) Plaintiffs failed to join necessary parties who might be inequitably affected by an injunction, such as the artists/performers at the Stadium, and Tiebreaker Productions LLC ("Tiebreaker"), the events-production company that orchestrates the events at the Stadium. Because of this defect, Defendant argues the instant motion must be denied.
Defendant also argues that Plaintiffs' have failed to prove the elements which must be established when seeking a preliminary injunction. Specifically, Defendant argues Plaintiffs are not likely to prevail on the merits of their underlying case, they have not demonstrated that they will incur irreparable harm, and a balance of equities does not favor Plaintiffs. In support of Defendant's contention that Plaintiff is not likely to prevail on the merits in their underlying nuisance case, Defendant argues issues of fact exist regarding whether the alleged noise violations are unreasonable. Specifically, Defendant argues that noise code violations are immaterial to maintaining an action for nuisance and furthermore, any noise readings obtained that were above the Noise Code limits are not probative as the sounds of routine life in Forest Hills when no concerts are occurring routinely exceed the Noise Code limits. Moreover, there is disagreement among the Stadium's neighbors regarding the performances' impact on their quality of life. Defendant supports this contention by submitting affidavits of Forest Hills Residents as well as the affidavits of local business owners. One such resident, Jillian Grancaric, stated in her affidavit that from her apartment, which abuts the WSTC, "[n]either the crowds nor noise from the Stadium . . . ever disturbed [her] family, including [her] five-year-old and two-year-old children who routinely sleep through concerts and crowd passing by without any issue" (E69). Another resident, Juliana Chessin who lives "less than 200 feet away" from the Stadium (next door to individual plaintiff Jaray), and works from home three days per week, stated in her affidavit that "[d]uring almost every concert [she] cannot hear any noise from the Stadium while inside [her] apartment" (E70).
As to the second element requiring irreparable harm, Defendant contends, among other things, that Plaintiffs' delay in pursuing this injunction (and the underlying case) expose the lack of any urgency and any alleged irreparable harm. Defendants also argue that any harm Plaintiffs [*3]incur is monetarily compensable. Additionally, Defendant asserts that any harm to Plaintiffs is speculative as events at the Stadium have yet to take place, and there are now additional noise mitigation measures in place that were not in effect during the 2023 performances.
As to the third element, Defendant argues a balance of equities favors the status quo, as an injunction would be devastating to Defendant and other non-named third parties. Defendant submits the affidavit of non-party Michael Luba, Tiebreaker's co-founder and president, wherein Mr. Luba explains, among other things, the costs of operating events in the Stadium, existing contracts between Defendant and Tiebreaker, as well as contracts for events at the Stadium between Tiebreaker and third-parties. Defendant also submits the affidavit of Jason Brandt, the individual "responsible for all operations at the Stadium as well as coordinating improvements at the Stadium on behalf of non-party Tiebreaker" (E27). Significantly, Mr. Brandt stated that at the last concert in 2014, when Tie-Breaker received a noise violation citation from the DEP, Tie-Breaker then worked with the DEP and expert consultants ARUP and Theta Consulting to implement noise mitigation measures, and in 2015 the "DEP confirmed [Tiebreaker was] in full compliance with the agreed-upon noise mitigation plan. Likewise, ARUP subsequently confirmed that '[t]hese measures, once implemented, were . . . effective at reducing the concert sound levels outside the [S]tadium.' " (E27). Brandt also attaches to his affidavit a report, dated April 27, 2023, by ARUP which indicated that after taking a series of sound level measurements in April 2023, " 'the maximum ambient sound levels in the absence of music within two nearby adjacent residential properties exceed[ed]' limits imposed by Section 24-241.1 and Section 24-231 of the New York City Noise Code" (E27). Thus, Mr. Brandt states that "like much of New York City, Forest Hills is generally a loud and active neighborhood for reasons having nothing whatsoever to do with events at the Stadium" (E27). Based upon the foregoing, Defendant argues that Plaintiffs' request for an injunction must be denied.
In reply, Plaintiffs reiterate their request that this Court grant the first and third branches of their motion and withdraw the branch of their motion requesting this Court preliminarily enjoin Defendant from hosting any concerts or large-scale events in 2024 until a plan is implemented.
"To establish entitlement to a preliminary injunction, a movant must establish (1) a likelihood or probability of success on the merits, (2) irreparable harm in the absence of an injunction, and (3) a balance of the equities in favor of granting the injunction" (DiFabio v Omnipoint Communications, Inc., 66 AD3d 635, 636 [2d Dept 2009]). "[P]reliminary injunctive relief is a drastic remedy which will not be granted unless a clear right thereto is established under the law and the undisputed facts upon the moving papers, and the burden of showing an undisputed right rests upon the movant" (Saran v Chelsea GCA Realty Partnership, L.P., 148 AD3d 1197, 1199 [2d Dept 2017]).
"A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land." (Copart Indus., Inc. v Consol. Edison Co. of New York, Inc., 41 NY2d 564, 568 [1977], (internal citations omitted)). "The elements of a private nuisance cause of action are: (1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act" (Del Vecchio v Gangi, 2024 NY Slip Op 01292 [2d Dept Mar. 13, 2024]). "[A]lthough an individual cannot institute an action for public nuisance as such, he may maintain an action when he suffers special damage from a public nuisance" (Copart Indus., Inc. v Consol. Edison Co. of New York, Inc., 41 NY2d 564, 568 [*4][1977]). "It is actionable by the individual person or persons whose rights have been disturbed" (Id.).
The Noise Code states in relevant part that:
"Unreasonable noise means any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business."
(NYC Administrative Code 24-203 [62]). Additionally, section 24-218 states in relevant part:
(a-1) No person shall make, continue or cause to permit or be made or continued any unreasonable noise:
(1) for any commercial purpose or during the course of conducting any commercial activity; or
(2) through the use of a device, other than a device used within the interior living space of an individual residential unit, installed within or upon a multiple dwelling or a building used in part or in whole for non-residential purposes.
(NYC Administrative Code 24-218).
After reviewing the parties' submissions, this Court finds that Plaintiff's request for a preliminary injunction is denied. As a preliminary matter, this Court finds that necessary parties have not been joined. "An action is subject to dismissal if there has been a failure to join a necessary party . . . The rule serves judicial economy by preventing a multiplicity of suits. It also [e]nsures fairness to third parties who ought not to be prejudiced or 'embarrassed by judgments purporting to bind their rights or interest where they have had no opportunity to be heard' " (City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469, 475 [1979]) (citing First Nat. Bank v Shuler, 153 NY 163, 170 [1897]); see also Inc. Vil. of Atl. Beach v Pebble Cove Homeowners' Ass'n, 139 AD2d 627, 627 [2d Dept 1988]). Here, were this Court to grant Plaintiffs' request to preliminarily enjoin Defendant from creating and/or allowing noise to emanate from the Stadium in excess of the Noise Code, this Court would essentially also be instructing Tiebreaker and those whom Tiebreaker works with (ie. performing artists). The Court also notes, that according to the affidavit of Brandt (the individual in charge of all operations at the Stadium), Tiebreaker has been the one to implement noise mitigation procedures in the past, and when the DEP did issue noise citations in years prior, those "citations were issued by DEP to Tiebreaker (not [The WSTC])." (E27). Such citations indicate not only that Tiebreaker has direct control over the sound levels, but also illustrate that Tiebreaker's interests that are directly implicated. Thus, because all necessary parties have not been joined, Plaintiff's motion for a preliminary injunction is denied.
Furthermore, this Court finds that notwithstanding the foregoing, Plaintiffs' request is also denied because Plaintiffs have failed to establish the elements entitling them to preliminary injunction. "[E]xcept for the issue of whether the plaintiff has the requisite property interest, each of the other elements is a question for the jury, unless the evidence is undisputed" (Weinberg v Lombardi, 217 AD2d 579, 579 [2d Dept 1995]). Here, Plaintiffs have failed to show a likelihood of success on the merits and that a balance of equities leans in their favor.
Plaintiffs have failed to show a likelihood of success on the merits because they failed to establish that the noise from the stadium is unreasonable. (See Kahona Beach LLC v Santa Ana Rest. Corp., 29 Misc 3d 1210(A) [Sup Ct 2010], ("What is reasonable is sometimes a question of law and at others a question of fact. When it depends upon an inference from peculiar, numerous [*5]or complicated circumstances it is usually a question of fact"]) (internal citations omitted)). Here, the affidavits submitted by Individual Plaintiffs conflict with the affidavits of residents submitted by Defendant regarding the impact of the sound emanating from the Stadium during events, with some complaining of disturbed sleep and high levels of noise, and others claiming no disturbances. It is not clear to the Court how two neighbors could have such extraordinarily different experiences. Whether the homes of the residents Defendant obtained affidavits from contain features that "ameliorate[] the effect of the sound" is not for the Court to surmise (E86). Additionally, there is disagreement between ARUP and Mr. Fierstein regarding the levels of ambient noise and the significance of those levels when measuring the Stadium's noise levels. Thus, Plaintiffs has failed to establish a likelihood of success on the merits.
The Court also finds a balancing of equities fails to lean in Plaintiffs' favor. According to Defendant's submissions, Tiebreaker has extended great effort and expense to implement noise mitigation measures in conjunction with the DEP and other experts. Tiebreaker has also been working for years with the DEP, NYPD, and other experts, to permanently reduce the impact its live performances have on its neighbors (cf. Gross v 133 E. 80th St. Corp., 2023 NY Slip Op. 30375[U], 6 [NY Sup Ct, New York County 2023] (where court granted Plaintiff's motion for preliminary injunction to enjoin Joe & The Juice New York LLC, a named defendant, to lower the store's non-live music "and finding some temporary sound-proofing solutions until a more long-term solution can be agreed upon"). Additionally, this Court will not venture into asking artists to alter their live performances by adjusting their bass and the levels of various frequencies in their songs — especially when those artists are not parties to the case. Moreover, it is not for the Court to interfere with the contracts the WSTC has with non-parties (ie. Tiebreaker and the performing artists). Thus, Plaintiff has failed to establish the equities lean in its favor. Given the Court's findings above, it need not delve into the parties' remaining arguments.
Accordingly, Plaintiff's motion is denied. Nonetheless, this Court orders Defendants to continue working with the DEP and NYPD to comply with relevant laws and regulations, including the Noise Code, and to continue to work on further noise mitigation efforts on which the Club,
Dated: April 12, 2024
ROBERT I. CALORAS, J.S.C.